Ruffin, Judge.
 

 Unquestionably this will would not, ia England, confer on the executor a power to sell land. A power is a legal term, and the words which will create it are well known at the common law. Under the execution of it, the legal estate passes, and the purchaser is in, not under him who executes it, but under him who created it, and under the instrument containing it. The
 
 *285
 
 words “ after my just debts are paid,” would create a charge on the land in favor of creditors.
 
 (Shalcross
 
 v.
 
 Finden
 
 3
 
 Ves.
 
 739). But this is in Equity. At law, they are nugatory. They do not prevent the estate vesting under the devise. Nor do they enable a debtor by simple contract to reach his debt at law. For that very reason, Equity gives relief. Aud it being a principle of that Court, that all debts, however evidenced, are alike in conscience, there arises the doctrine of equitable assets. At common law, lands devised were exempt from all debts. But Equity, ever anxious to have just debts paid, strove to apply the real estate to their satisfaction, since otherwise they would remain unpaid. This was effected by holding the. devisee to be a trustee for creditors, if the testator gave any intimation that such was his wish. The slightest expression was sufficient — as,
 
 (s
 
 if he
 
 talks about his debts
 
 in the beginning of his will” —for it is considered, that he meant to go beyond the law, in making a provision ; else why not leave it to the law by being silent.
 
 (Williams
 
 v. Chitty, 3
 
 Ves.
 
 552.) But this does not clothe the executor with authority to make the sale. He is the last person who should nave it; for he is entitled to the surplus of the personalty, and
 
 the
 
 question, whether the debts are to be raised out of the land, is to be litigated with him, since, although liable, they are not primarily liable. The personal estate remains the natural and first fund, unless it he expressly exonerated. Indeed lands devised, are subject only in the third degree ; for those descended stand before them. This makes the executor and the heir necessary parties to a bill, filed by a creditor against the de-visee; because the latter is liable only in default of the funds in the hands of the other two. But upon such a bill, the decree is not, that the executor shall sell, hut that the devisee make the title, and sometimes it has included the heir, to prevent his contesting the will at law. The lands therefore remain real and equitable assets. There
 
 *286
 
 was formerly some difference of opinion, upon the effect of a devise to the same person who was executor, in trust to sell to pay debts. But Lord Camden, in
 
 Silk
 
 v.
 
 Prime
 
 (1
 
 Bro. C. C.
 
 138) reviewed all the cases, and finally came to the conclusion, that the only instance in which lands devised are legal assets, is, where there is a naked power to the executor,
 
 qua
 
 executor, to sell. — - The simple contract creditors cannot complain of this, because they can in any event take only by the bounty of the testator, and they must take it upon his terms. In the case of such a power, the assets remain legal, but they cease to be real. When the land is sold, the, price becomes personal assets. It comes to the executor’s hands
 
 virtute
 
 officii, as money. The land is converted out and out into personalty, by the express direction of the will. The testator mixes the funds, and turns both into one, in the hands of the executor, as such. Upon the same footing of intention, it is exactly the reverse, with a charge of debts simply. The testator does not ¡mean, that the executor shall interfere with the land in such case, because he does not mix the funds, but makes the laud liable, after the executor has exhausted the personalty. And it cannot be supposed he intended his devise to be defeated, until the fact be judicially ascertained, that his debts can be paid in no other manner than by the land. Equity therefore, whose creature this doctrine is, will not suffer the lands to be sold in the first instance,* as might be done, if it construed these words as creating a general power of sale in the executor. It requires a bill against the devisee, that he may contest the debt, and when its existence is ascertained, may show that the executor or heir is liable before him | oi* Stay pay off the incumbrance without a sale.
 

 In this same spirit are our statutes, regulating the proceedings against heirs and devisees conceived, when they give the
 
 sci.fa,
 
 and collateral issue. There is, how-«ver, an important difference between eur law and that
 
 *287
 
 of England. Their statute of fraudulent devises (3 W. &
 
 M.
 
 14) exempts lands devised for the payment of debts from its operation. It left the principle of Equity entire; because such lands can still be reached only in that Court. Hence, up to this time, the Chancellor looks out for some expression in.the will which can enable him to lay hold of the land. Their statute has been said to have been sent to Parliament by the Chancellor. With the same propriety, ours of 1789
 
 fEev. c.
 
 311, s, 2) may be said to have been the work of a strict common lawyer. For it makes all devises void, as against creditors. The necessity for the interposition of Equity is therefore removed. The whole
 
 substratum
 
 of the jurisdiction is demolished, since the law, without the testator’s help, has made the land subject to debts generally. There is nothing for Equity to do. If the testator create an express trust for the payment of his debts, I will not say, that it is absolutely void ; but it certainly is, except in those cases w here it is for the benefit of all the creditors to consider it not so. For the act makes the devise void, as against creditors, and consequently the lands are legal real assets, to be liable according to the course of the law. Equity cannot, against this statute, confer the power on the testator of making them liable in a different order. The case of a power in the executor may be as at common law, because the assets then remain legal, though they are changed to personal. And as a sale by the devisee makes him personally liable, and discharges the land at law, a case may arise by the insolvency of the devisee, in which the only relief of the creditor would be, to pursue the. land in the hands of the purchaser, upon the idea of the trust expressed in the will, which would be notice to the purchaser. With these exceptions, I know not a single case, in which a Court of Equity could find room to act in this State. Such words there-, fore as are iri this will, mean nothing here
 
 ;
 
 or, at most, are an idle declaration, that the testator knows he can-
 
 *288
 
 110£ give away bis property, before his debts are paid. They are just as futile, when applied to realty in North-Carolina, as they are in England, if used in relation to ppPsona]ty. If then in England they only create a charge, to be enforced in Equity against the land, as a fund subsidiary fo the personalty, the argument against their giving a power to the executor to sell, is still stronger here; because they do not here even constitute a charge in Equity, since the lands are liable at law as legal and real assets, that is to say, after the insolvency of the personal estate or of the executor. What reason can there be to give, by a strained construction of the will, the authority to the executor to sell the lands before he had fully administered, or after he has become insolvent? Such would be the effect of saying that he had a power. The position would be equally prejudicial to the creditor and the devisee.
 

 Of course, this discussion cannot affect the doctrine of marshalling the real and personal estates, as between the legatees and devisees. That is quite a different question, being between volunteers and the creditors to be paid at all events.
 

 Upon the whole, we all think, nothing passed by the will to the executor, nor, by his sale, to the other lessors of the Plaintiff.
 

 Per Curiam. Let the judgment below be reversed, and a new trial granted.